IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Max Seifert,

    Plaintiff,

    vs.                        Case No.11-2327-JTM

Unified Government of Wyandotte
County and Kansas City, Kansas, *et al*,

    Defendants.

MEMORANDUM AND ORDER

This matter is before the court on the defendants' Motion to Exclude the testimony of plaintiff Max Seifert's proposed expert witness, Vincent Faggiano. The defendants generally argue that Faggiano's testimony is inadmissible under Fed.R.Evid. 702 because he is not qualified to render opinions that the defendants violated various constitutional rights by their actions, opinions which defendants argue are beyond his expertise. (Dkt. 220, at 4, 12-14).

More specifically, they argue that (1) any discussion of the treatment of the plaintiff in the immediate aftermath of the *Bowling* car stop is irrelevant and precluded by the court's dismissal on statute of limitations grounds of any claims premised on acts of alleged retaliation occurring before June 9, 2009 (*id* at 5-8); (2) any discussion of a "blue code" or "code of silence" is purely speculative and without foundation under *Daubert (id.*

at 8-10); (3) testimony as to the underlying excessive force claim in *Bowling* is irrelevant (*id*. at 10), (4) Faggiano impermissibly comments on the credibility of witnesses in his report (*id*. at 10-12); (5) Faggiano's testimony as to the termination for cause of a civilian position is erroneous under Kansas law (*id*. at 14-5);(6) Faggiano is not qualified to render opinions as to the validity of the defendants' concerns with respect to the application of *Giglio v. United States*, 405 U.S. 105 (1972) (*id*. at 15-16); and (7) Faggiano is not qualified to offer testimony as to "nationally accepted police standards." (*Id*. at 16).

In his Response to the motion, Seifert disavows as a "straw man" the suggestion that Faggiano's testimony addresses broad issues which would invade the province of the jury. (Dkt. 242, at 3). Indeed, he claims that defendants manufactured the issue when "they omitted a critical portion" of Faggiano's report indicating a more restricted line of testimony.[1] (*Id*.)

In many instances, Seifert does not dispute the defendants' motion. He agrees that an expert should not testify as to the credibility of witnesses. (*Id*. at 4). He states that he "does not seek to re-litigate the use of force by the DEA" in the *Bowling* case. (*Id*. at 14). He generally stresses that Faggiano has been recognized as an expert witness, and recites his experience in law enforcement. (Id. at 5-10). He submits that Faggiano should be permitted to testify as to "the 'blue code' generally," that the defendants' actions "are 'consistent with' the operation of the 'blue code,'" and that the defendants' whistle-blower procedures

---

[1] The court finds no basis for the suggestion that defendants' brief unfairly quotes Faggiano's report as to his proposed testimony. That report is indeed partially quoted on page 2 of the defendant's motion; it is also quoted in full on page 4.

violate nationally accepted law enforcement standards.

For the reasons provided herein, the court hereby grants defendants' motion.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993). Under Rule 702, the court must decide first "whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (quoting Fed. R. Evid. 702)). Second, the court "'must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony.'" *Id.* (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006).

Under *Daubert*, the court determines the reliability of proposed testimony by looking to factors such as (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error associated with the theory; and (4) whether the theory has attained widespread or general acceptance. 509 U.S. at 592-94.

On the other hand, an expert may be qualified to render opinions based on experience alone. *Kumho Tire v. Carmichael*, 526 U.S. 137 (1999). *See Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1235 (10th Cir.2004). To the extent a witness is relying primarily on experience, he or she "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Frazier*, 387 F.3d 1244, 1261) (11th Cir.2004). The court

3

has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire*, 526 U.S. at 152.

The core of the plaintiff's Response is an attempt to support Faggiano's proposed description of a police "blue code" of silence as to excessive force claims. This "blue code," the Response asserts, "is a familiar subject in the law enforcement world," (Dkt. 242, at 2), and suggests similar expert evidence is routinely admitted by courts. However, plaintiff cites only three cases justifying the use of expert testimony to establish a "blue code" of silence. (*See* Dkt. 242 at 2-3 and 14, each citing the same three cases). These cases are distinguishable.

In *Doe v. City of San Diego*, 35 F.Supp.3d 1233, 1244-45 (S.D. Cl. 2014) the court denied the defendant's motion for summary judgment based upon the testimony of two experts: a former police officer with 28 years of service and who had retired as Deputy Chief of Police of the Irvine, California Police Department, and a Professor of Criminology at the University of Texas at Dallas and former chair the Department of Criminal Justice at the University of North Texas. Critically, as to both witnesses, the court stressed: "The City does not seek to exclude [the witness's] testimony under Federal Rule of Evidence 702." *Id.* at 1244 n. 9 & 10.

In *Obrycka v. City of Chicago*, 2012 WL 601810, *7 (N.D. Ill. 2012), the court allowed the testimony of two experts as to a code of silence in the Chicago Police Department: a statistician who described the very small rate at which excessive force claims against the Department were sustained, and a police veteran with "vast experience and knowledge of

law enforcement in general and the Chicago Police Department in particular." *Id.* at 8.

Finally, *Kinney v. Weaver*, 301 F.3d 253, 277 (5th Cir. 2002) did not directly address the qualifications necessary for a police procedures expert; it merely observed that a "code of silence" may sometimes exist in some police departments. Moreover, the plaintiff cites *Kinney* without noting that the decision of the three judge panel was subsequently vacated by the Fifth Circuit, 338 F.3d 432 (5th Cir. 2003). Its later decision *en banc* does not directly address qualifications for an expert to testify regarding a code of silence. 367 F.3d 337 (5th Cir. 2004).

Plaintiff otherwise states in his Response that "there is no requirement that Mr. Faggiano have been employed by the Kansas City Kansas Police Department or the Wyandotte County Sheriff's Department in order to provide opinions regarding those departments [and] Defendants cite no authority for this proposition." But defendants could have done so — and could have pointed to the *Obrycka* case itself for an illustration of how such unfamiliarity with local procedures is a very important consideration in deciding whether to permit such testimony. In a subsequent order, the court explicitly rejected another expert proffered by the plaintiff, precisely because the expert had little experience with the Chicago Police Department.

> In this case, Plaintiff seeks to admit Dr. Manning's testimony to support her Monell claim regarding the "culture" of the Chicago Police Department. Despite Dr. Manning's extensive academic research on policing in general, however, his knowledge about the CPD is primarily based on a three-day visit to Chicago in 1996, when he brought students and faculty to meet with members of the CPD to learn about the crime mapping approaches of the department. Crime mapping bears no relevance to the issues in this case—it

5

>involves a police department's strategy for creating partnerships and working with communities to prevent and combat crime. Other than that three-day visit, Dr. Manning has never conducted any research on the Chicago Police Department. Beyond reviewing the materials Plaintiff's counsel sent him, Dr. Manning failed to familiarize himself with the culture, structure, and policies of the CPD—the specific subject of his expert testimony. As a result, he was unable to defend his CPD-specific assertions during his deposition or at his Daubert hearing. The Court appreciates Dr. Manning's position that "I am an expert in policing, and insofar as that is the case, I can speak to the general patterns in the Chicago Police Department, or in the City of London." Plaintiff has not, however, met her burden in demonstrating the foundation for Dr. Manning's specific testimony in this case. Thus, despite Dr. Manning's impressive credentials and extensive research in many areas of policing, he lacks the requisite foundation for his CPD-specific opinions. Accordingly, he is not qualified to provide his proffered expert opinion in this case.

*Obrycka v. City of Chicago*, 792 F.Supp.2d 1013, 1023-24 (footnotes and citations omitted),

The Response attempts to support the witness's qualifications by noting Faggiano's declaration documenting his extensive law enforcement experience, which occurred largely prior to his retirement in 1998. (Dkt. 242, at 7-9). The declaration, however, does nothing to address the issues raised in defendants' motion as to Faggiano's knowledge of the KCKPD or the Wyandotte Sheriff's Department. To the contrary, Faggiano's declaration only highlights this lack of reliability. Thus, the declaration noted that Faggiano has "observed the operation of the 'blue code' *first hand in Rochester* with various instances of police conduct." (Decl. at ¶ 12 (emphasis added)). "There are numerous occasions that I can recall *in my years at the Rochester Police Department* were I had to address the operation of the 'blue code.'" (*Id*. at ¶ 14 (emphasis added)). Otherwise, the declaration merely states that Faggiano talks about the subject in his post-retirement training sessions (*id*. at 19).

6

Faggiano attempts to support his proposed testimony only at the most general level possible, repeatedly offering the conclusory observation: "[t]he 'blue code' or 'code of silence' is a widely recognized problem." (*Id*. at ¶¶ 16, 20).

In sum, plaintiff provides no support for Faggiano's proposed testimony as to a "blue code" as it may exist at the KCKPD or the Wyandotte Sheriff's Department. His opinion does not rest on any particular methodology. He cites no articles or learned treaties. He conducted no tests to determine the existence of such a "blue code" among the defendants. Plaintiff has done nothing to assure the reasonable reliability of the proposed expert testimony.

Plaintiff's reliance on recent decisions in which Faggiano was qualified as an expert witness is misplaced. In both *Bowling v. United States*, 740 F.Supp.2d 1240, 1264 (D. Kan. 2010), and *Brockhoff v. Vescovo*, No. 06-0151-GAF (W.D. Mo. 2008), Faggiano was allowed to testify, but only as to whether the defendants employed unnecessary force on the day in question. He was not permitted to testify as to some generic "blue code" policy among all police departments across the United States.

As indicated earlier, plaintiff attempts to fall back on an emphasis that Faggiano will not be directly testifying that the defendants violated his civil rights — he will merely be testifying that their actions are "consistent with" a "blue code" of silence and the violation of his rights. This argument implicitly recognizes the distant and dated nature of Faggiano's actual experience with "blue code" incidents, and the accordingly limited reliability of his testimony. To support this argument, plaintiff relies in particular on the

decision of the Tenth Circuit in *United States v. Charley*, 189 F3d 1251, 1264 (10th Cir. 2003). *Charley* does not support the use of an otherwise unqualified expert through the device of testimony of various facts as "consistent with" a party's theory of the case.

In *Charley*, the Tenth Circuit applied the "consistent with" analysis to "a board certified pediatrician who attended medical school at Johns Hopkins University" who "also had specific experience with child sexual abuse cases," and held that the doctor expert could testify "that normal physical examinations can still be consistent with abuse." *Id.* at 1263. The court thus upheld the trial court's decision that the pediatrician expert could "summarize the medical evidence and express an opinion that the evidence is consistent or inconsistent with the victim's allegations of sexual abuse." *Id.* at 1264.

In contrast, the *Charley* court also addressed the testimony of two health counselors. To the extent that the counselors offered opinions such that the victims required counseling, the court held the evidence was not erroneous as impermissible vouching for the victims' credibility, "and were not objected to in any event." *Id.* at 1270. However, the court ruled that the opinion by one counselor that a victim's "symptoms were more consistent with the symptoms of children who have been sexually abused ... was erroneously admitted. No sufficient foundation was laid for this kind of expert analysis." *Id.* (citing *Kumho Tire,* 119 S.Ct. at 1175-76)

Faggiano is not a physician testifying to the results of medical examinations. He is a former law enforcement officer whose actual experience with the "blue code" is based upon unspecified, "various instances" in the Rochester, New York Police Department

8

almost two decades ago. As noted earlier, plaintiff points to no reliable methodology or documented procedure to support the use of Faggiano's testimony. Plaintiff has failed to meet his burden under Rule 702 of showing that the witness's limited experience renders him qualified to render the proposed testimony, or that such testimony is reliable.

The same result holds for the proposal that Faggiano would testify as to nationally accepted police standards and procedures. Faggiano's report offers the proposal as a bare conclusion, with no basis for determining that he is qualified to offer such an opinion. (Dkt. 221, at 8-9). Faggiano's recent declaration simply cites his earlier report. (Dkt. 242, Exh. 1, ¶ 21). The plaintiff's Response similarly fails to demonstrate the reliability of the proposed testimony.

IT IS ACCORDINGLY ORDERED this 8th day of January, 2016, that the defendant's Motion to Exclude (Dkt. 220) is hereby granted.

_____s/ J. Thomas Marten\_\_\_
J. THOMAS MARTEN, JUDGE